## DEARING *v.* SPEEDWAY REALTY COMPANY.

[No. 16,690. Filed March 23, 1942. Rehearing denied May 8, 1942. Transfer denied June 8, 1942.]

586

*O. B. Hanger* and *Connor D. Ross,* both of Indianapolis, for appellant.

*Clarence W. Means* and *Otto W. Buenting,* both of Indianapolis, and *Edgar Blessing,* of Danville, for appellee.

BEDWELL, P. J.—By this action the appellant, Robert Dearing, seeks to vacate a judgment that was rendered by the Hendricks Circuit Court on December 5, 1928, in a cause wherein the appellant by his father, Curtis

L. Dearing, as next friend, was plaintiff, and the appellee, Speedway Realty Company, was defendant.

The appellant is relying upon the overruling of his motion for a new trial as error, and as grounds thereof upon which he relies, he specifies the following:

"1. The decision is contrary to law.

"2. The decision is not supported by sufficient evidence.

"3. Error in the Court's ruling permitting introduction in evidence, over appellant's objection and exception, appellee's Exhibit 'D', . . .

"4. Error of the court in permitting appellee's witness, Harry Medlock, an attorney in the former action, to testify, over objection and exception, as to conversation with Judge Bash, . . ."

The cause was tried by the court, which made a general finding that the judgment theretofore rendered in the cause was a valid and subsisting judgment and should not be set aside, and thereon the court rendered judgment that the appellant take nothing by his complaint in this action.

The amended complaint of appellant upon which the cause was tried is extensive and we will not attempt to set forth in detail the allegations thereof. A summarization of the principal matter shown thereby is as follows:

(1). On June 18, 1927, the appellee owned a building situated in the City of Indianapolis, and attached thereto was a fire escape which extended over a public alley; that because of the negligence of appellee in the maintenance of such fire escape in described particulars, the lower flight thereof fell upon appellant, who was then an infant of the age of ten years, while he and other children were playing in such alley, and thereby appellant was severely injured.

(2). That on August 19, 1927, while appellant was in a hospital as a result of such injury, an action was filed in his name by his father, as next friend, against the appellee to recover damages therefor; that issues were made therein and the cause was sent on change of venue to the Circuit Court of Hendricks County for trial; that appellant was a minor when such action was filed and did not attain his majority until August 8, 1938.

(3). That the attorneys who represented the appellant in such action were negligent in that they failed to make a good-faith effort to prosecute the action; that they willfully, carelessly and fraudulently, in disregard of the rights and interest of the appellant, permitted the cause to come up for hearing without the presentation of any evidence concerning appellant's injuries; that instead of acting and conducting themselves in the interest of appellant, they acted solely in the interest of the defendant, and willfully, carelessly and fraudulently agreed to a perfunctory and informal hearing to be held without the introduction of any testimony, and on December 5, 1928, they appeared in the absence of plaintiff, and in the absence of the next friend, with attorney of the defendant, before the judge of the Hendricks Circuit Court and requested such judge to enter a consent finding and judgment in favor of the plaintiff in the sum of $500 for the purpose of foreclosing the right of the appellant to a meritorious hearing of his cause.

Many other general allegations charging attorneys of appellant with actual fraud and breach of faith are contained in the pleadings, among which is a charge that attorneys for appellant cooperated with attorneys for appellee in a fraudulent and collusive scheme to deprive the appellant of a just, legal and adequate hear-

ing and judgment commensurate with the injuries sustained by him as a result of such action, and that the acts and conduct of such attorneys were designed to use the court and its judicial power as a tool and device of fraud and deception to bar the appellant's rights, and that the court was misled and deceived thereby, and by reason thereof the judgment was a nullity.

(4). The prayer of such complaint was that the judgment be declared void and that it be set aside and that the plaintiff be permitted to proceed with his cause of action for damages.

This cause was tried in the Hendricks Circuit Court and a judgment rendered on December 15, 1939. The following observations are made concerning the evidence that was introduced at such trial:

(A). That there was conflict in the evidence concerning the legal liability of appellee for the injuries and resultant damages to appellant. While appellant introduced evidence to show negligence of appellee in the maintenance of a rope or cable by which the lower flight of the fire escape was operated, and claimed that because of such negligence the lower flight of the fire escape fell upon appellant, crushed him to the pavement, broke his leg and pelvis and severely and permanently injured him, the appellee introduced evidence which tended to show that the appellee was not negligent in the maintenance of the fire escape, and that the injuries to appellant had resulted from his own acts, or the acts of an older boy with whom he was playing and who pulled down the lower flight of the fire escape and thereby caused his injuries.

(B). That the injuries to appellant were severe and permanent; that as a result thereof medical and surgical attention of the value of from one thousand to fifteen hundred dollars was necessary; that a hospital

bill for four hundred ninety-one dollars was incurred; that appellant was confined to the hospital for a long period of time and lost much schooling; that one of his legs was shortened and other detrimental and painful physical conditions resulted.

It is a fair conclusion from the evidence concerning injury, which was without conflict, that damages in the amount of $500 was not full or adequate compensation therefor.

(C). That the attorneys for appellant who represented him in the particular action wherein a judgment for $500 was rendered, acted in good faith and did what they thought was for the best interest of appellant; that they had made an investigation of the facts connected with appellant's injury and doubted the legal liability of appellee therefor; that they had obtained from the counsel of appellee an offer to pay the sum of $500 to appellant, and the sum of $400 to the father and mother of appellant for loss of his services; that they advised the father of appellant to accept such offer, and that he agreed and made no objection as to the amount thereof. That following such agreement an attorney representing the appellant and an attorney representing the appellee appeared in the Circuit Court of Hendricks County on December 5, 1928, and that such court then made a general finding and rendered a judgment as follows:

> "Come now the parties by counsel and by agreement this cause is submitted to the Court for trial, finding and decree without the intervention of a jury. The evidence is heard, and the Court having been fully advised in the premises find for the plaintiff that the allegations of his complaint are true, and that he is entitled to a judgment against the defendant in the sum of five Hundred Dollars together with the costs of this action.
>
> "It is therefore ordered, adjudged and decreed

by the Court that the plaintiff, Robert Dearing, by Curtis Dearing, next friend, recover of and from the defendant, Speedway Realty Company, a corporation, the sum of $500.00, and the costs of this action laid out and expended and taxed at _____ dollars and _____ cents."

That after such judgment was rendered Curtis L. Dearing, the father of appellant, was appointed his guardian by the Probate Court of Marion County, and thereafter he appeared in the office of the clerk of the Hendricks Circuit Court and as such guardian receipted for and collected such judgment. Appellant and his father and mother testified that they were not present in the Hendricks Circuit Court on December 5, 1928, when the foregoing judgment was rendered, and the father of appellant testified that he did not procure any witnesses for such hearing, but there is nothing in the record to show what was done or was not done in such court when the judgment was rendered. Appellant introduced no evidence whatever concerning the actual proceedings or the nature or extent of the hearing preliminary to the rendition of such judgment. The record discloses that the attorney for appellee, who then appeared, was deceased, and attorney for appellant, who then appeared, had suffered a paralytic stroke and was unable to testify.

Appellant admits that the record shows no fraud practiced upon the Hendricks Circuit Court by appellee or its counsel, or by any of the counsel of appellant that induced such court to enter the judgment of December 5, 1928. He also admits that there was no evidence which indicated that his attorneys did not act in good faith in connection with the settlement of his cause of action and the entry of such judgment. He is contend-

ing that the evidence produced at the last trial was sufficient to show without contradiction that the judgment of December 5, 1928, was a consent judgment, following a compromise of appellant's action, that was entered without hearing and without a judicial determination of whether the settlement was beneficial to appellant, and that because of such facts constructive fraud has been established which required the Hendricks Circuit Court to vacate its judgment of such date.

To sustain his contention the appellant is relying upon a number of cases in other jurisdictions. By the great weight of authority it has repeatedly been held that a court may set aside a consent judgment following a compromise of a minor's claim where there has been no real examination of the facts to determine whether the settlement is for the best interest of the minor. *Moebius* v. *McCracken* (1933), 261 Mich. 409, 246 N. W. 163; *Railway Co.* v. *Lasca* (1909), 79 Kan. 311, 99 P. 616, 21 L. R. A. (N. S.) 338, 17 Ann. Cas. 605; *Robison* v. *Construction Company* (1921), 291 Mo. 34, 236 S. W. 332, 20 A. L. R. 1239; *Carroll* v. *Atlantic Steel Company* (1921), 151 Ga. 378, 106 S. E. 908, 15 A. L. R. 660; *Tennessee Coal, Iron & Railroad Co.* v. *Hayes* (1893), 97 Ala. 201, 12 So. 98. See, also, *Pittsburg, C. C. & St. L. Ry. Co.* v. *Haley* (1897), 170 Ill. 610, 48 N. E. 920; *Spring Valley Coal Co.* v. *Donaldson* (1905), 123 Ill. App. 196; *Keller* v. *Furniture Co.* (1930), 199 N. C. 413, 154 S. E. 674; *Leslie* v. *Proctor & Gamble Mfg. Co.* (1917), 102 Kan. 159, 169 P. 193, 195, L. R. A. 1918C, 55.

Many of the cases bearing upon such proposition are discussed in an annotation contained in 15 A. L. R. beginning on page 667. The author of such annotation

reaches the following conclusion from an examination of the cases digested:

> "It is a general rule that where a judgment is rendered for the plaintiff in an action by an infant through his next friend to recover damages for personal injuries, and there is no judicial investigation as to the merits of the claim, but the proceedings are merely formal for the purpose of carrying out a settlement or compromise of the action made without the consent of the court, even though the court acquiesces in the rendition of the judgment, it will not be permitted to stand as a bar to a hearing in behalf of the infant upon the merits of his claim."

It should be noted that in many of such cases the trial court which had entered the judgment by consent, had vacated its own judgment, and the court upon appeal was called upon to determine whether it had violated its discretion and had committed error. The action of a trial court in granting or refusing an application to open, modify or vacate a judgment is, generally speaking, within the judicial discretion of such court, and this is true whether the court is proceeding under the common law or under statutory provisions. *Hoag, Administrator*, v. *Old People's Mutual Benefit Society* (1891), 1 Ind. App. 28, 27 N. E. 438; *Masten* v. *The Indiana Car, etc., Co.* (1900), 25 Ind. App. 175, 57 N. E. 148; *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 268, 102 N. E. 372, L. R. A. 1917B, 984; *Houser* v. *Laughlin* (1914), 55 Ind. App. 563, 104 N. E. 309; *Earle* v. *Earle* (1883), 91 Ind. 27; 31 Am. Jur., Judgments, § 717, p. 267.

In none of the cases does it appear that the infant was represented by counsel who had instituted his action solely in his behalf, at the request of his parents, with the intention of prosecuting it to final determination, and, thereafter, upon an investigation of all the

facts, had in good faith reached an agreement for settlement which the counsel felt, under all the conditions and circumstances, was beneficial to the interest of the infant plaintiff. In all of the cases of which we are advised, there was no investigation by the trial court to determine whether the entry of the consent judgment would be beneficial to the infant. In the case at bar, while the appellant alleged that the judgment of December 5, 1928, was entered without hearing, other than the statement of counsel, there was no proof of such allegation. The record of the judgment showed trial and hearing of evidence.

In the case of *Young* v. *Wiley* (1915), 183 Ind. 449, 107 N. E. 278, it was alleged in certain paragraphs of the complaint that a father, for the purpose of divesting any rights of his children arising under a will, instituted an action to have the will construed so as to vest title in him solely. It was further alleged that a guardian *ad litem* was selected by the father and formally appointed by the court, and that he gave no attention to the matter, and that it was heard in his absence, and that no defense was made or evidence given. In considering this allegation the court, on page 461, says:

"The allegation that no evidence was given, will not be heard to contradict the record, unless the latter affirmatively shows that no evidence was given, and as we are not advised what the record shows, we are bound to presume that all the evidence necessary to authorize the judgment was given. Lawson, Presumptive Ev. (2d ed.) 36, note; *Chestnut* v. *Southern Ind. R. Co.* (1901), 157 Ind. 509, 62 N. E. 32; *Wright* v. *City of Crawfordsville* (1895), 142 Ind. 636, 42 N. E. 227; *Keller* v. *Reynolds* (1895), 12 Ind. App. 383, 388, 40 N. E. 76, 280."

We believe that this court in the case of *Colvert* v. *Colvert* (1932), 95 Ind. App. 325, 178 N. E. 692, cor-

rectly states the applicable rule of law when it quotes the following from *Thompson* v. *Maxwell, etc., Co.* (1897), 168 U. S. 451, 42 L. Ed. 545:

" 'An infant is ordinarily bound by acts done in good faith by his solicitor or counsel in the course of the suit, to the same extent as a person of full age. . . . And a compromise, appearing to the court to be for the benefit of an infant, will be confirmed without a reference to a master; and, if sanctioned by the court, *cannot be afterwards set aside except for fraud.*' "

We do not hold that a trial court should ever approve a compromise of an infant's legal rights without a full investigation of all the conditions and circumstances so that the court is satisfied that the adjustment is beneficial to the infant. This is true although the infant is represented by counsel. The trial court should not rely solely upon the statement of the parents, or of the next friend, that a settlement has been made that is satisfactory to them, nor should it rely without investigation upon the statement of counsel, that counsel has reached a satisfactory settlement. There should be a hearing of such testimony or the ascertainment of such facts as will fully convince the court that the judgment it is entering will fully protect the infant's rights and interest. 27 Am. Jur., Infants, § 132, p. 852.

In an early decision, *Crain and Others* v. *Parker, Administrator* (1849), 1 Ind. 374, our Supreme Court determined that a decree against infants, without proof, was erroneous, notwithstanding the fact that a guardian *ad litem* had admitted the truth of the allegations of the bill.

In the case of *McCord* v. *Bright* (1909), 44 Ind. App. 275, 290, 87 N. E. 654, where the rights of infants were involved, this court says:

"If this were a suit between parties, neither of whom was under disabilities, we would not of our own motion raise the question last considered, by reason of the rule that parties in this court are bound by the theory of the case they have chosen for themselves. But here the interest of a ward of the court, a favorite of chancery, is affected. She is incapable of choosing a theory. She is incapable of choosing any representative or waiving any right. She can do no act that would operate as an estoppel. Neither can her guardian do these things for her, to her detriment. *Shamleffer* v. *Council Grove, etc., Mill Co.* (1877), 18 Kan. 24; *Whitehead* v. *Jones* (1876), 56 Ala. 152; *Driver* v. *Evans* (1886), 47 Ark. 297, 1 S. W. 518; *Cochran* v. *McDowell* (1853), 15 Ill. 10; *Bearinger* v. *Pelton* (1889), 78 Mich. 109, 43 N. W. 1042; *Wood* v. *Truax* (1878), 39 Mich. 628; *Clement* v. *Sigur* (1877), 29 La. Ann. 798; *Jones* v. *Massey* (1877), 9 S. C. 376; 15 Am. and Eng. Ency. Law, 71, 72; *Crain* v. *Parker* (1849), 1 Ind. *374; *Hough* v. *Doyle* (1846), 8 Blackf. 300; *Hough* v. *Canby* (1846), 8 Blackf. 301. It therefore becomes the duty of this court to search the record, without regard to the position assumed by the parties, and determine whether the transaction, under the facts disclosed, should or should not be upheld."

Nor is it necessary that the fraud that will permit a consent judgment to be vacated, where it has been entered in favor of an infant plaintiff, be the fraud that arises through false representations made by the defendant to the infant or to his next friend or to the court. As is pointed out in the case of *Robison* v. *Construction Company, supra,* it is considered fraudulent to take advantage of the incompetency of an infant to protect his own interests, and where judicial proceedings are had as a result of a settlement of an infant's right of action which have for their purpose the foreclosure of the infant's right to disaffirm an unfair settlement when he reaches his majority or when he obtains mature counsel, the con-

ditions and circumstances connected with the proceedings and the entry of the judgment may show fraud despite the fact that no false representations were made to the infant, its next friend, or to the court.

Fraud could not be established by proof, solely, that the amount of the judgment rendered in favor of the infant plaintiff was not full or adequate compensation for the injuries that he received. It is apparent to all who are familiar with personal injury litigation that verdicts are seldom, if ever, rendered by juries, or settlements made in the course of the litigation, where exact compensation is given for the loss or injuries sustained. There is no way to measure in money the exact amount of compensation that should be paid a plaintiff in a personal injury action. Nor is the character or extent of the injuries alone determinative of the amount of compensation that can or should be received in the adjustment of such an action. Other elements, such as the availability of evidence, the character of the proof, the financial responsibility of the defendant, the expenses incident to the procurement of testimony, the delay of judicial proceedings, and the certainty concerning the cause of action are factors which influence the amount of adjustments.

Infants should not be denied the advantages that quite often can be derived from the settlement of their causes of action, without litigation. This requires the trial court to properly perform its duties and to make a proper investigation in all cases before it enters a judgment. The appellant herein has wholly failed to show that the Hendricks Circuit Court did not do this in this particular case.

It was also necessary for appellant to show at the trial of the present case that he had a meritorious cause

of action that was barred because of the judgment of December 5, 1928, and that he was injured because of the alleged fraud in procuring the entry of such judgment. This court does not weigh conflicting evidence. The evidence concerning the nature and merit of appellant's cause of action was conflicting, and under such evidence the Hendricks Circuit Court could have determined that the adjustment of such action for $500 was beneficial to appellant. We are bound by its determination under such circumstances.

Appellant contends that the trial court erred in permitting the introduction in evidence of appellee's Exhibit "D", which was the examination under oath taken of appellant in connection with and prior to the first hearing. This evidence was offered to show that appellant's admissions under oath in his examination before the first hearing was contradictory of the testimony he gave at the last hearing. It was admissible for such purpose. *Fuller* v. *Fuller* (1913), 52 Ind. App. 488, 491, 100 N. E. 869; *Scott* v. *Scott* (1912), 51 Ind. App. 194, 196, 99 N. E. 435; *Indianapolis, etc., Traction Co.* v. *Wiles* (1910), 174 Ind. 236, 239, 91 N. E. 161.

Appellant also objects because the witness, Harry Medlock, who was attorney for appellant in connection with the first hearing, was permitted to testify concerning his conversation with Judge Bash, who was judge of the Marion Probate Court. There was no objection to such witness testifying on the ground that he was attorney for appellant. The objection thereto was that the conversation occurred outside the presence of the plaintiff and that any conversation with the judge of the court, or any statement made by such judge, would not bind the Hendricks Cir-

cuit Court nor the plaintiff. The evidence was introduced solely upon the theory that it tended to negative fraud and bad faith of attorney for appellant in connection with the settlement of his cause of action. Appellant lived in Marion County and the judge of Marion Probate Court appointed his father as guardian. We think the evidence was proper as a circumstance explanatory of the efforts of appellant's counsel to procure a settlement beneficial to him and to show their good faith in negotiating a settlement.

It is well settled that on the issue of fraud, great latitude is permitted in the introduction of evidence. This was a trial by court where the court could properly limit the consideration of the evidence. Where fraud is in issue the whole transaction from beginning to end may be scrutinized and circumstances shown as throwing light upon the intention of the party charged. *Nat. City Bank* v. *Kirk* (1926), 85 Ind. App. 120, 134 N. E. 772; *Firebaugh* v. *Trough* (1914), 57 Ind. App. 421, 107 N. E. 301.

No reversible error having been shown, judgment is affirmed.

BLESSING, J. and STEVENSON, J., having been of counsel do not participate in determination of this cause.

NOTE.—Reported in 40 N. E. (2d) 414.