**John H. RAFFERTY, Arabella Rafferty, Carla Anne Rafferty, Christine Anne Rafferty, and Daniel Rafferty, Plaintiffs,**

v.

**John Crawford RAINEY, Defendant.**

No. 823.

United States District Court
E. D. Tennessee,
Winchester Division.

June 7, 1968.

G. Nelson Forrester, John McCord, Tullahoma, Tenn., for plaintiffs.

Gerald L. Ewell, Manchester, Tenn., Pat B. Lynch, Winchester, Tenn., Peter Trenchi, Jr., Tullahoma, Tenn., for respondent.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action in damages for personal injuries and property damages by Mr. and Mrs. Rafferty and by their three minor children through Mr. Rafferty as their next friend. All matters and things in controversy among the parties were stipulated to have been settled after a jury had been sworn to try the issues on January 16, 1968. Afterward on the same day, the Court conducted a hearing on the fairness and reasonableness of the settlement and of the fees and expenses to be deducted therefrom as regards the three minor plaintiffs. The Court was not satisfied, on evidence produced by the minors' father Mr. Rafferty, that the proposed settlement of $500, with no deductions for expenses, was in the best interest of the minor plaintiff Daniel Rafferty, who was then eight years of age. Accordingly, the matter of the compromise settlements was taken under advisement by the Court, pending the provision of additional medical testimony as to the diagnosis and prognosis of young Mr. Daniel Rafferty.

There appears to have been in recent years a lack of understanding on the part of the bar of this Court generally as to the role of the Court in considering the settlement of actions involving persons under legal disability, where such are urged by the natural guardian of such person and where the incompetent is represented by competent counsel. This may have its origin in a somewhat unfortunate dictum of the Tennessee Supreme Court of nearly half a century ago.

It was then said that: " * * * A judgment of the court was rendered upon the compromise, and this judgment embraced all of its terms, so that the case, as it comes to us, is *an agreed judgment based upon the compromise agreement of the parties.* This *eliminates all questions which could be made upon the authority of the next friend to bind the infant by an agreement to the compromise.* * * * " [Emphasis added.] Roberts v. Vaughn (1920), 142 Tenn. 361, 365, 219 S.W. 1034, 9 A.L.R. 1528, 1529[2]. The Attorney General and Reporter of Tennessee, contrary to the annotater for American Law Reports, did not make this language the subject of a syllabus in that decision: very properly so, because such is not a complete statement of Tennessee law. Later in the *Roberts* opinion, supra, however, appears this clarification: " * * * Because the contestant [in a will contest] was an infant he could not bind himself by the compromise at all, unless it was to

his advantage. Therefore, it was necessary to submit the compromise to the * * * judge, and have his approval on behalf of the infant. This was all done, and was clearly within the jurisdiction of the * * * court, because the jurisdiction to try the will contest is given by statute, and the jurisdiction to compromise it follows as of necessity. * * *" Ibid., 142 Tenn. at 370, 219 S.W. at 1036.

A fuller exposition of the rule is found in the following statements:

(a) "* * * There is no rule of law which prohibits the settlement of legal controversies merely because infants may be interested, or which compels a court to go through the tedium and expense of determining rights as to which the parties themselves are in agreement. Where infants are involved, the courts are charged with the duty of seeing that they are properly represented and that their interests have not been sacrificed and that the agreement is to their advantage; but when this duty is performed the interests of an infant may be settled or compromised as well as that of any other litigant. * * *" Carter Coal Co. v. Litz, D.C.W.Va. (1943), 54 F.Supp. 115, 134 [34, 35], affirmed C.A. 4th (1944), 140 F.2d 934.

(b) "* * * [T]he character or extent of the injuries alone [are not] determinative of the amount of compensation that can or should be received in the adjustment of * * * an action. Other elements, such as the availability of evidence, the character of the proof, the financial responsibility of the defendant, the expenses incident to the procurement of testimony, the delay of judicial proceedings, and the certainty concerning the cause of action are factors which influence the amount of adjustments. Infants should not be denied the advantages that quite often can be derived from the settlement of their causes of action, without litigation. *This requires the trial court to properly perform its duties and to make a proper investigation in all cases before it enters a judgment. * * *"* [Emphasis supplied.] Dearing v. Speedway Realty Co. (1942), 111 Ind.App. 585, 599, 40 N.E. 2d 414, 419; 8 A.L.R.2d 465, Anno.:— Vacating Approval of Settlement.

These expressions have support in the statutory, text, and decisional law of Tennessee, viz.:

(a) "* * * The circuit judge or chancellor shall approve such compromise, if it shall be deemed to be in the best interest of such infant. * * *. The order or decree approving and confirming any such compromise shall be binding upon such infant * * *." T.C.A. § 34–1102. "* * * Any judgment or decree entered pursuant to the provisions of this chapter [Title 34, ch. 11] shall have the same force and effect as a judgment or decree entered after the trial of an action or suit * * *." T.C.A. § 34–1103.

(b) "[T]he Chancery Court, acting in *loco parentis,* and as general guardian for minors * * *, will do for them and their property, what they themselves would in all probability have done if possessed of good reason and good conscience. * * *" 2 Gibson's Suits in Chancery (Crownover, 5th ed.) 274, § 1016.

(c) "* * * [I]n an action to recover damages for personal injuries to an infant, where the proceedings in court are merely formal, and are instituted and carried on only to give an apparent sanction to a settlement agreed upon between the defendant and a parent of the infant, and there is no judicial investigation of the facts upon which the right or extent of the recovery is based, a judgment in favor of the infant entered in pursuance to the agreement and by consent merely, is only colorable and will be set aside in a proper proceeding when its effect, if allowed to stand, would be a bar to the infant's substantial rights. * * *" Kates v. Anderson, Dulin, Varnell Co., C.A.Tenn. (1929), 9 Tenn. App. 396, 404[4], certiorari denied (1929).

Thus, it is clear that an onerous burden devolves upon this Court in considering proposed settlements involving

minors and other persons under disability. The proceedings in these matters may not be merely perfunctory, and the fact that counsel for the incompetent recommends it, or that a parent or other natural guardian urges its acceptance, may not be considered as conclusive by the Court, upon whose shoulders the ultimate responsibility plainly rests.

The Court declined to confirm the original settlement proposed as to the minor plaintiff Daniel Rafferty as aforesaid, absent his examination by a competent neurologist, because his father had testified that the youngster had a knot on his head and harbored some fear of riding in motor vehicles. This was about 18 months after the accident in which he was injured.

 Counsel have now stipulated into evidence, the medical report of a neurological surgeon and have " * * * agreed * * * " that $1,500 is a fair and reasonable settlement for this youth and in his best interest. The Court does not agree.

The financial responsibility of the defendant has not been made to appear, but his liability is stipulated.[1] The necessary medical evidence is available to the plaintiff. No great expense would seem to be incident to the procurement of such testimony. No untoward delay in judicial proceedings appears in prospect. His parental situation indicates that he will not be denied any particular advantages that often accompany the settlement of causes of action. of others in a contrary economic situation.

Should this Court now confirm the proposed settlement, the claim of the minor plaintiff would be forever barred, regardless of the organic and emotional, if not mental, difficulties which are indicated by the prognosis of his condition and might accrue. On the other hand, if the Court refuses confirmation of the proposal, and if these possibilities do mature into realities, young Mr. Rafferty will have approximately 14 years in which to pursue his claim against the defendant Mr. Rainey.

The more recent diagnosis of the present condition of this minor is that, after two full years following his injuries, he continues to suffer malfunctioning of his brain as a result of an injury to his head. Specifically, he is found to have sustained a residual injury to the back of his forebrain. An electroencephalogram taken on January 26, 1968 reflected a minimal, abnormal result, because of a few 14 and 6 c/s positive spikes during the young man's sleep, which type of abnormality may cause him to have headaches and become emotionally upset.

This physician expressed a *guarded* prognosis, because of the abnormal electroencephalogram and the possibilities of future manifestations of the injury described. He thinks there is a possibility that a lesion or affection may follow, which could result in violent involuntary contractions, or a series of contractions, of the voluntary muscles. He states also that, if there is scarring of the outer layer of the minor plaintiff's brain, or if a tumor develops, composed of tissue representing the supporting structure of the brain, this could be manifested in behavior disorders or disorders of the minor plaintiff's thought processes.

Obviously, these potentialities are far too great to permit the Court, in good conscience, to approve the proposed settlement of $1,500 for Daniel Rafferty's damages. It may be that, with the passage of time and the growth of this young man, these possibilities will wane. Certainly, it is to be hoped by everyone concerned that this will prove to be the case. As of now, however, the risks of serious residuals from his injuries of April 8, 1966 are too harrowing to permit final confirmation of the compromise presented.

Accordingly, the proposed compromise settlement hereby is

Rejected.

---

1. Pretrial order herein, II (e). Thus, the liability of the defendant to this minor plaintiff is not admitted *solely* for the purposes of settlement of his claim.