

**FILED**

Oct 14 2015, 9:56 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

P. Gregory Cross
The Cross Law Firm, P.C.
Muncie, Indiana

ATTORNEYS FOR APPELLEES

Thomas M. Beeman
Kyle B. DeHaven
Beeman Law Office
Anderson, Indiana

Alexander M. Beeman
Ciobanu Law, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Scott Alan Stibbins, individually
and as Personal Representative
of the Estate of Warren E.
Stibbins, and Trustee of the
Warren E. Stibbins Revocable
Trust, et al,

*Appellants-Defendants,*

v.

Carol (Stibbins) Pagano Foster,
Angela Pagano, and Christopher
Pagano,

*Appellees-Plaintiffs*

October 14, 2015

Court of Appeals Case No.
18A02-1410-PL-750

Appeal from the Delaware Circuit
Court

The Honorable Marianne L.
Vorhees, Judge

Trial Court Cause No.
18C01-0902-PL-4

**Baker, Judge.**

[1] Warren Stibbins had seven children and a complicated estate plan. In the years before his death, Warren became frustrated with the inability of his daughter, Carol, to manage her finances. He purchased an annuity for her that would have provided a steady source of income for the rest of her life, and then removed her as a beneficiary from his estate plan and from her deceased mother's trust. After Warren's death, Carol and her children filed an action contesting the probate of Warren's will. They were unsuccessful after years of litigation and a five-day jury trial. After they lost the will contest, they sought to be reimbursed for their attorney fees pursuant to Indiana Code section 29-1-10-14. Although the trial court found that two of their three claims were litigated without good faith and just cause, it found that their third claim met that test. As a result, the trial court ordered that the estate pay all of Carol's attorney fees and costs in an amount exceeding $170,000.

[2] The estate now appeals, arguing, among other things, that Carol and her children do not have standing to seek attorney fees because they are not devisees under the relevant statute. We agree, and reverse the judgment of the trial court awarding attorney fees to Carol and her children.

# Facts[1]

Warren Stibbins (Warren) was a successful family physician who lived most of his life in Muncie. He and his wife, Mary Stibbins (Mary), were the parents of seven children: David Stibbins, Mary Liddy, Scott Stibbins, Carol Foster (Carol), Thomas Stibbins, Susan Stibbins, and Sarah Hohmann.

Mary died in 1994. In accordance with the Stibbinses' estate plan, a significant amount of money had been placed in a living trust in Mary's name (Mary's Trust), which became irrevocable upon her death. Mary's Trust permitted Warren, the primary beneficiary, to amend some of its provisions even after the trust had vested, through the exercise of a power of appointment in his will.

During the years following his wife's death, Warren became concerned about Carol, who had significant difficulty managing her financial affairs. She received frequent monetary gifts from her parents and siblings, as well as distributions from Mary's Trust, but always seemed to be in need of more. Eventually, in the spring of 2005, Warren decided to purchase an annuity for Carol that would pay her a specified sum of money—nearly $1,000 per month—for the rest of her life.

On August 16, 2005, Warren executed a revocable trust (Warren's 2005 Trust), providing that he would be its primary beneficiary for the balance of his

---

[1] We held oral argument in this cause in Indianapolis, Indiana, on September 15, 2015. We thank counsel for both parties for their outstanding written and oral advocacy.

lifetime, and upon his death, the property would be distributed to four of his children. Two of Warren's children, David and Thomas, were very successful physicians, and in Warren's judgment, they did not need this inheritance. Carol was also excluded as a beneficiary because he had provided for her otherwise with the annuity. In 2005, Warren also executed a pour-over will (the 2005 Will) that did not name Carol as a beneficiary.

[7] After an altercation at Warren's home in January 2006, Carol and her son, Christopher Pagano, never saw Warren again. Carol's daughter, Angela Pagano, did not see Warren again after he bought her a computer sometime in 2005.

[8] In April 2007, Carol sold the present rights in her annuity. While Warren's initial investment in the annuity totaled over $180,000, Carol sold it for approximately $70,000, to pay off some of her debts.

[9] Later that year, Warren realized that David, Thomas, and Carol were still named as beneficiaries to Mary's Trust. On May 5, 2008, Warren executed a new will (the 2008 Will) exercising the power of appointment to remove David, Thomas, and Carol as beneficiaries.

[10] Warren died on October 7, 2008. Neither Carol nor her children attended his funeral.

[11] On February 13, 2009, Carol initiated an action to contest the 2008 Will. Christopher and Angela joined her as plaintiffs. They sought to revoke probate

of the will, reverse the exercise of the power of appointment with respect to Mary's Trust, and restore Carol as a beneficiary of the trust. Carol and her children also filed a second action to challenge Warren's 2005 Trust, which did not include her as a beneficiary. Eventually, the two actions were consolidated.

[12] A jury trial regarding the 2008 Will took place over the course of five days, beginning on June 16, 2014. The jury found that the will was valid, and judgment was entered in favor of the defendants.

[13] On July 24, 2014, Carol and her children filed a petition for attorney fees and expenses. Following a hearing, on September 22, 2014, the trial court granted Carol's petition. In relevant part, the trial court found and concluded as follows:

> 5. Argument on Standing: Defendants argued Carol, Angela, and Christopher cannot recover attorneys' fees and expenses because they were not devisees under the last two wills executed by [Warren]. . . . Plaintiffs countered by arguing that if they had set aside the [2008] Will, . . . they would have also sought to set aside the [2005 Will] . . . . If successful, they would have probated the [third will in line, executed in 1992, which included Carol as a beneficiary].
>
> ***
>
> . . . [T]he Court finds authority to support Plaintiffs' argument that they have standing to seek attorneys' fees. Although it would have involved a great deal of legal activity, attorneys' fees, and expenses, Plaintiffs could have eventually brought to probate a Will naming them as beneficiaries.

For these reasons, the Court finds Plaintiffs have standing to request the Court to order their attorneys' fees and expenses reimbursed and/or paid from the Estate assets.

6.      Did Plaintiffs Bring This Action in Good Faith and With Just Cause?  The Court does not question the attorneys' good faith in litigating this matter. . . . [T]he Court will only consider whether Carol litigated this matter in good faith and with just cause in deciding whether to award attorneys' fees and expenses.

(A)      Fraud Action:  If Plaintiffs had brought the action based only on Fraud, the Court would not have awarded fees and expenses.  The Fraud argument was puzzling, at best, and the testimony from the Plaintiff's handwriting expert bordered on the incredible.[2]

(B)      Incompetency:  Although this claim was a little stronger than the Fraud claim, the evidence on the Fraud and Incompetency claims together might not have caused the Court to find "good faith and just cause." . . .

(C)      Undue Influence:  Plaintiffs' strongest ground was Undue Influence.  The evidence submitted required the Court to give a jury instruction concerning

[2] The expert testified that dozens of specimens of Warren's handwriting were forgeries.  She was also certain that the signatures of all of the witnesses to nearly all of the documents at issue in this litigation were forgeries.  Carol found this expert on the Internet.  The expert received her training from another Internet vendor who also offered programs on, among other things, how to predict the gender of unborn children through the handwriting of a parent.  At times, the jurors laughed audibly during the expert's testimony.

undue influence, and Defendants had to overcome
the presumption of undue influence. . . .

The Court finds at least on the Undue Influence Claim, Plaintiffs
brought the action in good faith and with just cause. Because all
three claims were so interrelated, the Court cannot divide the fees
among the claims.

Appellants' App. p. 27-29. The trial court ordered the Estate to pay Carol's

attorney fees in an aggregate amount of $171,360.64. The Estate now appeals.

# Discussion and Decision

## I. Cross-Appeal

First, we will consider Carol's cross-appeal. She argues that the trial court erred
by denying her motion for amendment of the pleadings to conform to the
evidence presented pursuant to Indiana Trial Rule 15(B). A ruling on a Rule
15(B) motion is within the discretion of the trial court, and we will reverse only
upon finding a "clear and prejudicial" abuse of that discretion. *Lutz v. Belli*, 516
N.E.2d 95, 101 (Ind. Ct. App. 1987). Indiana Trial Rule 15(B) provides as
follows:

> When issues not raised by the pleadings are tried by express or
> implied consent of the parties, they shall be treated in all respects
> as if they had been raised in the pleadings. Such amendment of
> the pleadings as may be necessary to cause them to conform to
> the evidence and to raise these issues may be made upon motion
> of any party at any time, even after judgment, but failure so to
> amend does not affect the result of the trial of these issues. If
> evidence is objected to at the trial on the ground that it is not

within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

The complaint originally filed by Carol and her children did not raise whether Warren's exercise of the power of appointment over Mary's Trust benefited the decedent or his estate. On the fourth day of the jury trial, Carol moved to amend the pleadings to incorporate that issue. The trial court denied the request, and Carol now appeals that ruling.

The record reveals that in 2010, after the first round of depositions were completed, Carol's attorney contacted the attorney for the estate, indicating that "'Plaintiffs believe that Warren committed breach of his wife's trust. When as trustee, he took the loans from the trust to himself and he exercised the power of appointment in a way intended to benefit himself personally.'" Tr. p. 768 (quoting from an email between the two attorneys). Carol's attorney asked the Estate's attorney, "'[w]ill it be necessary for us to move to amend the complaints to . . . assert the claims more precisely or do you agree those claims have been sufficiently raised to put you and the beneficiaries on notice?'" *Id.* The Estate's attorney responded, "'Yes, it will be necessary for you to amend the complaint . . . . You better amend the complaint because the complaint does not lead this theory.'" *Id.* at 769. Carol did not seek to amend the complaint.

To be entitled to amendment of the pleadings to conform to the evidence, a movant must establish that the issues were tried by the "express or implied consent of the parties[.]" Ind. Trial Rule 15(B). Here, the Estate was on record explicitly refusing to consent to precisely that. Carol chose not to attempt to file an amended complaint, and cannot now make an end-run around the opposing party's objections via Trial Rule 15(B). We find that the trial court did not abuse its discretion in denying Carol's motion to amend the pleadings pursuant to Indiana Trial Rule 15(B).

## II. Appeal

Where, as here, the trial court issues findings of fact and conclusions of law based thereon, we apply a two-tiered standard to review the trial court's order. *Oil Supply Co. v. Hires Parts Serv., Inc.,* 726 N.E.2d 246, 248 (Ind. 2000). We determine whether the evidence supports the findings and the findings support the judgment. *Id.* In deference to the trial court's proximity to the issues, "we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* We do not reweigh the evidence, but only consider the evidence favorable to the trial court's judgment. *Id.* We apply a de novo standard of review to questions of statutory interpretation. *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 513 (Ind. Ct. App. 2015).

## A. Standing

Carol and her children sought attorney fees pursuant to Indiana Code section 29-1-10-14, which provides as follows:

When any person designated as executor in a will, or the administrator with the will annexed, or if at any time there be no such representative, then *any devisee therein*, defends it or prosecutes any proceedings in good faith and with just cause for the purpose of having it admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements including reasonable attorney's fees in such proceedings.

(Emphasis added).

[20] The Estate argues that the trial court erroneously determined that Carol and her children were "devisees" pursuant to Indiana Code section 29-1-10-14. According to the Estate, because Carol and her children were not beneficiaries to either the 2005 or 2008 Wills, they were not devisees and did not have standing to seek attorney fees following the will contest action.

[21] The Estate acknowledges a line of cases finding that will contestors were "devisees" where, while they were not devisees of the will being contested, they were devisees of earlier wills that were intended to be offered for probate. *E.g.*, *In re Estate of Goldman*, 813 N.E.2d 784 (Ind. Ct. App. 2004); *Brown v. Edwards*, 640 N.E.2d 401 (Ind. Ct. App. 1994); *Estate of Clark v. Foster*, 568 N.E.2d 1048 (Ind. Ct. App. 1991); *Dunnuck v. Mosser*, 546 N.E.2d 129 (Ind. Ct. App. 1989). We find this line of cases distinguishable from the case before us. In each of these cases, the parties challenging the will were devisees under the next will in line to be probated. In other words, had the challenged will been set aside, the challengers would directly, and immediately, benefit as a result.

[22] In this case, in contrast, Carol and her children were not devisees of the will being challenged *or* of the next will in line. Instead, their status as devisees is far more attenuated. They would have had to make successful challenges both to the 2008 Will and to the 2005 Will in order to have a direct right to inherit. We have not found any caselaw holding that will challengers with such an attenuated right to inherit are entitled to seek attorney fees under the statute, and counsel for Carol and her children acknowledged at oral argument that to his knowledge, there are no such cases.

[23] It is well established pursuant to common law that each party to litigation is responsible for her own financial consequences associated with the matter, including attorney fees. *E.g.*, *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 659 (Ind. 2001). The only exceptions to this doctrine occur when a statute, court rule, or contractual agreement provides otherwise. *Porter Dev., LLC v. First Nat'l Bank of Valparaiso*, 866 N.E.2d 775, 779 (Ind. 2007). Where, as here, a statute is enacted in derogation of the common law, that statute must be strictly construed. *Hinshaw v. Bd. of Comm'rs of Jay Cnty.*, 611 N.E.2d 637, 639 (Ind. 1993).

[24] Indiana Code section 29-1-10-14 provides that when a will is challenged, "any devisee therein" may be entitled to attorney fees under certain circumstances. While, as noted above, this Court has held that "devisee" includes a person who stands to benefit directly if the challenged will is set aside, we simply cannot conclude that our General Assembly intended to include anyone beyond this limited group of people. If we opened the term "devisee" up as suggested

by Carol and her children, there would be no end to the slippery slope. If a ninety-year-old decedent had enacted a new will in every decade of his life, his college sweetheart who had been a devisee in his first will at the age of twenty would be entitled to attorney fees if she challenged the will in place at his death, notwithstanding the reality that she would have to successfully challenge six other wills to receive a direct benefit. We do not believe that our legislature intended such a result when it enacted this statute.

[25] Consequently, we find that a "devisee" pursuant to Indiana Code section 29-1-10-14 includes only devisees of the will being challenged and devisees of the next will in line who would directly benefit if the challenged will were set aside. Carol and her children do not qualify as devisees under this definition; consequently, they are not entitled to attorney fees pursuant to Indiana Code section 29-1-10-14. Therefore, we reverse the judgment of the trial court.

## B. Burden of Proof

[26] Although we need not address the remaining arguments made by the Estate, we choose to do so because we so rarely have the opportunity to address these issues that so frequently recur in estate practice. Among the most important issues raised by the Estate is the issue of who bears the burden of proof with respect to Indiana Code section 29-1-10-14, and what, precisely, that burden is.

[27] Indiana Code section 29-1-7-20 provides that a person challenging a will admitted to probate bears the burden of proof. It stands to reason that the same person would likewise bear the burden of proof in seeking attorney fees

following a will contest.  Thus, the challenger bears the burden of proving that she prosecuted the will "in good faith and with just cause[.]"  I.C. § 29-1-10-14.

[28]  This Court has previously explained that "[t]he purpose and public policy of [Indiana Code section 29-1-10-14] is to give all parties concerned a fair trial and to encourage the probating or the resisting of the probate of the will where there are *reasonable grounds or probable cause for such proceedings in good faith*, without compelling any party to risk financial loss by underwriting the expenses of such proceedings."  *Dunnuck*, 546 N.E.2d at 1291-92 (emphasis added).  We find that the *Dunnuck* Court articulated an appropriate and reasonable burden of proof, and hereby adopt that standard.  Therefore, we hold that a party who is seeking attorney fees pursuant to Indiana Code section 29-1-10-14 bears the burden of proving by a preponderance of the evidence that she litigated in good faith and with just cause, meaning that she had reasonable grounds or probable cause to litigate the will contest.  The party seeking attorney fees is not entitled to the benefit of the doubt; instead, that party must make an affirmative showing consistent with *Dunnuck*.

[29]  Assuming that the party seeking attorney fees is able to make the requisite showing of good faith and just cause, that party *still* bears the burden of proof with respect to calculation of attorney fees.  In this case, Carol and her children raised three claims.  Two of those three claims were wholly without just cause or good faith.  But Carol argues that because *the Estate* failed to separate *Carol's* attorney fees by claim, she is entitled to all of her fees.  This argument leads to

an impermissible shifting of the burden of proof to the Estate to disprove Carol's fees. We cannot countenance this approach.

[30] We acknowledge that the trial court was unable to separate the fees for the three claims, which is understandable given the process that was followed in this case. To avoid precisely this issue, we hold that a different process should be followed. First, the claimant seeking fees must prove that some or all of her claims were made in good faith and with just cause. The trial court must then make a preliminary determination as to which of the claims meet this standard. Then, the claimant is required to come forward with evidence showing the amount of attorney fees expended *only* for the claims that meet the statutory standard. In this way, the trial court and all parties can be assured that the claimant receives attorney fees only for those claims that were brought in good faith and with just cause, and the burden of proof remains on the claimant.

[31] The judgment of the trial court is reversed.

Mathias, J., concurs, and Bailey, J., concurs in result.